Next case is United States of America v. Justyn Perez-Colon. Mr. Donahue. Good morning, Your Honor, and may it please the Court. Keith Donahue for Appellant Justyn Perez-Colon. I'd like to reserve three minutes of my time for rebuttal, if I may. Granted. Your Honor, this case presents three issues of sentencing guideline error and a challenge to an insufficient factual basis from one count of conviction. Together, these errors resulted in an extremely severe sentence, fully 55 years. So that my client, who was 24 at the time of the offense, can I best hope to leave prison in his 70s if he makes it that long. The first guideline issue concerns a two-level enhancement that applies when the defendant is actually the child's own caregiver. We've got a standard of review issue on that, right? There certainly is always cause to consider standard review. I think the precedent is very much in our favor under United States v. Douglas in this case, the en banc 2018 decision. There the Court held that a very similar enhancement, enhancement for abuse of trust, was reviewed on a de novo basis. And the commentary to the enhancement at issue here actually likens it to the abuse of trust enhancement by stating that if you apply the two-level enhancement we're discussing, don't apply the abuse of trust. There's that much similarity between them. So I believe Douglas, which squarely said review is plenary on the abuse of trust enhancement. When was Douglas decided? 2018. It was an en banc decision and a panel decision. But that's because that case involved interpreting a provision of the guidelines. So we were doing an interpretation there, correct? And that's why you're saying it's de novo. Yes, and I believe it's an interpretation at issue here as well. Well, isn't this an application of a guideline? I would suggest it's an interpretation in the sense that. . . What's to interpret? We're taking a fact pattern, 18-month-old child, your client at the day's end. We know the basic facts. And then we've got the language of the guideline. And the question is, do those basic facts apply to the guidelines? So we're not parsing the language of the guideline. We're applying the fact pattern to the guideline, aren't we? I think there is some parsing of the language of the guideline to do here. All right, tell us how. Well, the guideline, most specifically, it requires an application of the canon of be just and generous to give meaning to the phrase otherwise in the custody, care, or supervisory control of the defendant. And that's because before that broad language in the guideline provision, the same guideline enumerates specific examples of who this enhancement covers. It says parents, legal guardians, and relatives. So when you have that specific enumeration followed by broad language, it presents a question of what does that broad language exactly mean? On its face, theoretically, it could reach so far as a defendant who abducts a child. That person has control. Clearly it doesn't mean that. So the court is in a good position in this case to provide some guidance to district courts as to the meaning of this enhancement. Much as in the Bell case, United States v. Bell, a 2020 decision, which concerned whether an airport security officer occupied a certain position, Judge Greenaway writing for the panel stated that this really requires us to look at the words of a provision and discern their basic intent. Bell seems to be in conflict with our prior decision in Richards. What do you have to say about that? I think Bell considered Richards, and it said it was not in conflict because there was no dispute in Richards. It said that Richards wasn't an application, right? I think what it says, there was no dispute in Richards as to what the test was. There was no dispute about the facts in Buford either, and the Supreme Court said, Justice Breyer's opinion said, that appellate courts should be very deferential to the findings of a trial judge because the trial judge is closer to the situation, sees these things more often. Yes, Your Honor. All that cuts against your argument, doesn't it? No. I'm not saying that there's no dispute as to facts is what's important. What I'm saying is that there's no dispute in Richards as to the controlling legal test. It really was just how does that test apply. There is a dispute in this case as to what the test is. We say the language of this guideline requires genuine parent-like authority on the part of the defendant. The government denies that that's the test. The government says it's enough if the defendant- Well, it can't be parent-like in a narrow way because the guideline specifically refers to babysitters, and babysitters are parents. And teachers. Right. Parent-like authority. Well, is a teacher parent-like? Yes, in the sense that a teacher occupies- Is a boyfriend who lives in a hotel room who watches- No. That is precisely the distinction between a teacher- A living boyfriend is less like a parent than a teacher? That's right. That's right, Your Honor. Really? Yes, in the sense that- Teachers are- that's kind of shocking to me. Cohabitation is not uncommon, and I had assumed that cohabitants would have a much greater level of intimacy than teachers. There might be a great deal of intimacy, but a teacher- the way I would frame this distinction is that a teacher occupies what we traditionally understand as an in loco parentis role. The child is, if only temporarily, entrusted to the teacher for supervision and care. And biological parents don't entrust their minor children to their cohabitants? They might do. That's resolved every day, doesn't it? Sure. Absolutely, Your Honor. But it did not happen here. So I was responding somewhat to your use of the term boyfriend. If we were talking about a stepfather or a long-term person who occupied effectively a guardian role, I would agree with Your Honor. But here we have a person who is a boyfriend, but he's simply staying in a hotel room with the parent of this child for six days. So on this particular issue, if I understand you correctly, the interpretation of the guideline is these people who are identified in this guideline all have been, quote, entrusted to care for a child. So that's the interpretation. If we apply that interpretation to these facts, you're saying this particular individual who was living at least for this one week period with this woman was not so entrusted. That's correct. So you have a de novo in terms of the interpretation, but then you want us to apply that interpretation to see whether or not the district court erred. Yes, that's correct. So that's where Richards would fall in because that's the application point. And that would be whether there was an abuse of discretion. Your position would be it would be an abuse of discretion because the interpretation was wrong. Am I understanding your argument correctly? I think that's right. I mean, in the sense that the court has sometimes referred to both. But Richards talked about clear error, right? Richards talked about clear error. I think actually in the Thuong Van Huynh case, the court said sometimes those merge, abuse of discretion and clear error. But I think that the reason we prevail on this issue is because at the initial stage, Judge Schwartz is describing of interpreting the guideline. Once that interpretation is decided upon, and it's not the rule the district court applied. I guess I'm having trouble with this interpretation issue because if we look at why isn't it just a matter of looking at the language of the guidelines in toto and asking whether this fact pattern satisfies that guideline. Because this guideline. You don't have to create sub-definitions of each term that's in the guideline, right? The guideline has a bunch of terms that the district court applied to this fact pattern. And why wouldn't we do the same? Well, the district court, I think, took an approach that the language of this guideline makes it sufficient for a defendant to abuse an opportunity he has. To take advantage of an opportunity. In that sense, the defendant here betrayed the trust of the mother in the sense that she trusted him not to abuse her child. But what the actual language of the provision requires is not simply that someone trusts someone, but that a child be entrusted to the defendant for supervision and care in the same fashion that children are sometimes entrusted. But that's, I don't see the word entrust anywhere in the guideline. Am I reading the wrong, the guideline I'm looking at says if the defendant was a parent, not at issue here, relative, not at issue here, or legal guardian, not at issue here, or if the minor was otherwise in the custody, care, or supervisory control of the defendant. So we know what the word custody means, we know what the word care means, and we know what the phrase supervisory control means. The question is, was this minor in the custody, care, or supervisory control of your client? And our position hinges on the interpretation to be given the phrase otherwise in the custody, care, or supervisory control. We submit that here is where the e-just and generous canon plays a critical role, because that broad language follows the specific enumeration of parents, relatives, and legal guardians, which means that the broad language has to refer to people who exercise the same genus of custody. All right, what if we disagree with you on that? Assume for a minute that we disagree with you on that. Assume that we think that otherwise in the custody, care, or supervisory control does not relate to a parent, relative, or legal guardian, because that would render nugatory those words. So if we disagree with you on that, what would we be reviewing de novo here? Well, I'm asking the court to engage my argument that you're stating hypothetically you disagree with me. I don't think it can be rejected as summarily as that question suggests. I'd refer the court to the Singh v. Uber Technologies decision. No, I'm not suggesting it's not a good argument. It's a fine argument. I'm just saying I'm trying to get to the next level. If we do reject that argument, we're just dealing with application of – Yes, if you reject our argument as to what that means, then you would get to applying that language of the facts. Okay. And how did the district court then clearly err in concluding that this fact pattern supported supervisory control? Because there was not so much here as even evidence that the mother asked my client, hey, keep an eye on this child. So far as the record shows, it was understood by the mother that perhaps my client would go run an errand or go smoke a cigarette. There wasn't even so much as a suggestion that she expected my client to keep an eye on the child. And certainly there was no evidence that he agreed or indicated he would do so. The district court sort of assumed it, right? All we really know is mother's in the shower, your client and the child are together. But it didn't – there's an assumption that when the mother went in the shower, the mother said to your client, hey, keep an eye on my daughter. I think that's right. I think there's an assumption at the basis of the even clearly erroneous conclusion. And it's also notable that the mother was present in the courtroom. She was available to testify. But apparently the government could not call her to say so much as I expected him to keep an eye on her. So one alternative assumption that nothing in the record disfavors more than the assumption the district court made was that the mother felt more comfortable showering because she thought this man, and she didn't know all that well, was going to be going somewhere, wasn't going to be staying with her daughter at that time. There's no support for one or the other, and it was the government's burden, as this is an enhancement that makes the range more punitive, to show a basis for it. So if it's an equal balance in that way, the failure of the burden. Exactly. All right. We've badgered you on this issue, and you've got other issues in the case. I want to give you a chance to address the other assignments of error you've made. Thank you. I guess I would perhaps jump to our third issue, which concerns guideline 4B1.5, which provides two enhancements in the alternative for certain repeat offenders. Under subsection A, there's an enhancement if the defendant has a prior sex offense conviction. Under subsection B, an enhancement if the defendant has engaged in a pattern of prohibited sexual conduct. Critically, the commentary defines both of those predicate categories identically. It defines sex offense conviction and prohibited sexual conduct identically, and it defines them as an offense described in a cross-reference section of Title 18. Because that language, offense described in, as a matter of settled interpretive convention, specifically the Supreme Court's Nijawan v. Holder decision, commands a categorical approach. But the guideline itself tells us to focus on conduct. The guideline does have the word conduct, but because that term and the phrase really prohibited sexual conduct is too vague to apply independently. So here the commentary does have force as clarifying what that language means, such that really the phrase conduct is just a placeholder here. In the abstract, conduct does suggest something different than what the commentary says it means, and it says it means an offense described in such and such statute. But isn't the reading of it that it's conduct that could be prosecuted under or would violate any one of those statutes? So we're looking at the activities of the individual, in this case your client, and whether or not those activities would state a crime for one of the offenses listed in the commentary. It's not a categorical approach question. It's a look at facts, look at conduct, and see if they satisfy the elements. And you want us to do a categorical approach here, and I don't see how we can do that where the guideline says conduct. Right. Well, conduct in the guideline is fleshed out. The meaning of it is fleshed out. The commentary says it means an offense described in it. It doesn't mean facts that could be prosecuted. In fact, I would urge the court to compare it with Guideline 2A3.1. There the guideline, again the commentary, does use language akin to what Your Honor stated. It says the defendant engaged in activity for which any person could be prosecuted for a crime. That's not categorical approach language. But here, even though you might think the word conduct would connote a categorical approach, it turns out in the commentary it's instead described in a different language, as an offense described in a federal statute. And that language has been held both by the Supreme Court and by Seventh Circuit in a decision by then-Judge Barrett, that when you have that language, offense described in, end of story. That's a categorical approach. So the Sentencing Commission could have written this definition the way it wrote the definition in 2A3.1. It did not, even though it was defining the very same phrase. So we do have a categorical approach, and there's no dispute among the parties that on a categorical approach that enhancement does not apply. Could I ask you about the grouping question? All I want to know is, do you think Section 3D1.2B is ambiguous? Yes, I do. If it's ambiguous, then we're allowed to look at the application note, correct? Yes. So applying the application note here, the application note says that two rapes would be not grouped. So doesn't that lead to a conclusion that the district court correctly placed these two, had two groups? I think that's a notable part of the application note, but no, I don't think it leads to that conclusion, Your Honor. Taking the application note as a whole, it identifies three types of offenses that do not group when they're committed on different days. Rapes, assaults, and robberies. So when you look at those three types of offenses, it indicates that the Sentencing Commission used the term rape in the sense of a forcible sexual assault. It's a kind of sexual assault that a victim perceives and it creates fear and a risk of physical harm to the victim. That's not the nature of the sexual exploitation involved in this case. It's not forcible. And in fact, the child was not even enticed to participate in sexual activity. It was really just my client's activity. So that is certainly pertinent language in the commentary. I think it does have to be distinguished from the nature of the conduct at issue here. In each of those examples, assaults, robberies, and rapes, the theory is that each of them visit separate harms each time they're carried out. By extension, each time there was an act of sexual exploitation, there was a separate harm carried out. Correct? I think by the time of the second act, it was a very marginal harm. Were they a different harm? It was part of a single composite harm. A harm that composed several parts, composite, which is the language the commentary also uses. The way I've come to think of it is, at the first occasion, that created 98% of the harm. And then after that, there was really just a... Incrementally less harm because the bad exposure had already happened once? That's the theory? Yes, and unlike in the situation the offenses in the commentary, none of this conduct caused risk of fear on the part of the victim. There was no fear involved. Well, that's only because, I assume you're saying, because we don't know whether there was fear, it was a child, it was a toddler. We don't know what kind of fear that... Well, the child was asleep. The child was asleep, so... On one of the episodes? I think on all the episodes that have been focused on, certainly the most significant images that were created. And there actually is some dispute as to exactly what other images there were. Okay. Thank you. Quick question about count two. The judgment identifies it as a distribution count rather than a production count, and that's at variance with the oral pronouncement of the court. What do we have to do, if anything, about that? I don't think you need to do anything right now. Because the oral pronouncement controls? The oral pronouncement controls. And, of course, we submit that the sentence should be vacated. But were this court to affirm that the judgment can be corrected under Criminal Procedure Rule 36 at any time in the future by the district court? Thank you very much, Mr. Dunahue. We'll hear you on rebuttal. Thank you. Mr. Zausmer? Good morning, Your Honor. May it please the Court, Robert Zausmer on behalf of the government. With respect to the first issue concerning supervisory control, the standard of review, of course, is important. And I think listening carefully to my friend, Mr. Dunahue, this morning, I don't think we're really in disagreement now. If there is an interpretive issue regarding this guideline, then that would be subject to plenary review under this court's precedent. Once that standard is established, then the court's application to the facts is reviewed for clear error. That's what the Supreme Court said in Buford. That's what this court followed in Richards. Even if the facts themselves are not in dispute, whether those facts fit the guideline as interpreted is subject to review for clear error. So Mr. Dunahue has posited an interpretive question of does it have to be parent-like authority? And that's a really easy question. The guideline itself answers that. This is not a situation of a justum generis where you are informed in your interpretation by the words that come right before. The guideline says that it is a parent relative or legal guardian or if the minor was otherwise in the custody care or supervisory control of the defendant. The guideline itself is explicit that it's not limiting it to a parental situation. And then if we have any doubt, we have the commentary to explain it, which says that the control can be temporary. I mean, there couldn't be a clearer statement that this is not a parental-like situation. And so then what we're left with, as I said, is simply applying this very clear guideline to the facts of the case, and that's Judge Prater's job. And she made an incredibly reasonable determination based on the facts that I think this court should defer to. Well, there was no real evidence. I mean, the evidence was circumstantial. I should say there was no direct evidence, right? So why isn't Mr. Dunahue right that this was just an assumption that the trial judge made that, well, you've got Toddler and Perez-Colón in a room. I'm going to assume that the mother intended for Perez-Colón to care for the child. Because the circumstantial evidence, Your Honor, was incredibly compelling. This man is living in the hotel room for a week with the mother and the child. These incidents take place numerous times over the course of several days. We know that from the photographic evidence, which happens at different times when obviously this man is left alone with the child. And then the judge makes the incredibly reasonable interpretation that basically no parent leaves an 18-month-old alone and unintended. And more so, if a person does leave an 18-month-old with another person, that person trusts that person. Those of us who are parents just know this. This is intuitive. I mean, this isn't just circumstantial evidence. But let's focus on supervisory control. Let's assume that the child misbehaved while the mom was in the shower. Would one assume that he, the defendant, would have had authority to discipline her? Well, I think that's a different question, Your Honor. I think that he would, depending on the nature of the misbehavior, he would have some responsibility to do something. But one is to protect her safety. The other is if she's... Stop her from harming herself, stop her from harming somebody else, or going to the bathroom there and getting the mother and saying, we've got a problem here, you know, and you need to attend to this. But he does have supervision at that point in time. And we also know from the evidence, and I think this goes a bit beyond circumstantial, that it's supervision for a decent period of time. Because, you know, I don't want to get into the nasty details here. You know them. The acts that take place are not ones that someone would do if they just have a second or they just have a minute. He knows he has supervision of this child for a long enough period of time to engage in the act that he engages in. And so this is not to suggest, as Mr. Donahue did, that this is just an opportunity, as if he's walking by the hotel room and sees that the child's not with the mother for a moment. That doesn't describe this case at all. Let me ask you about harmless error. The government didn't argue harmless error in its brief. Let's assume that the government prevails on all the other issues except this one. And so we have a two-level enhancement that was, quote, inappropriately awarded. The government didn't argue harmless error. Can we look at harmless error, and is it harmless?  The defendant has to prevail here on numerous issues in order to have any reasonable opportunity at a change in the sentence. The final offense level was 48, five levels above the level that advises a life sentence in any circumstance. And, of course, the court then varied from the life sentence. And so we pointed out that if you only prevail on this issue or you only prevail on the grouping issue, it doesn't matter. It's not going to make any difference. The defense argued in response in their reply brief, well, no, it does make a difference because a judge could be influenced by 54 versus 52. I think if you look at this case, you can't credibly make that argument. This judge was laser-focused on the incredibly serious facts of the case, not just of this case but of this man's history, which then led up to his committing the same offenses again. She's not influenced by the fact that it's 46 or 48. And as part of your reason for saying that is because in her sentencing remark, she talked about the target that she was looking for for his conclusion of his incarceration, which was in his 70s. Well, she said that, but, I mean, she carefully looked at all of the facts and all of the background and decided that a 55-year sentence was appropriate, which, as extreme as it is, and, of course, that's an extreme sentence, that is a variance below the suggested guideline range, which would apply with or without this two-level enhancement. So, yes, we do suggest that it would be harmless. We also suggest, of course, that there was no error. With regard to the second issue regarding grouping that was just briefly mentioned, I think, Judge Schwartz, that you really, your question suggests the right answer, which is, of course, these are separate harms. The guideline talks about a separate harm when you have two different rapes. These are multiple sexual assaults. How do we get to the application after Keesor? We have to conclude that 3D1.2B is ambiguous. Is it ambiguous? I think it is. If so, how so? Well, it says, counts of all the same victim or two or more acts connected by a common criminal objective or constituting part of a common scheme or plan. I think those phrases do bear interpretation. I think, given the myriad number of things that that could apply to, as to what's a common scheme or plan, that there is ambiguity there that calls on the commission to interpret it in the commentary. So what's ambiguous about it? Is it the word common, because something common could have different meanings? Like regular occurrence, it could be we have an agreed upon goal. I'm trying to figure out what's ambiguous about this so that we can get where you'd like to go, which is us looking at that application note. Well, I think when we think of the many areas in which this can be applied, not just to sexual assaults, but to robberies and murders and drug schemes and what have you, it does need more interpretation, which the commission very helpfully provides. It provides numerous examples, which then have allowed courts for many years to zero in on this without too much trouble in lots of different contexts and decide what the commission means here. So you think we should infer from the fact that the commission gave lots of examples was its way of telling us, we really weren't really clear, so let's be more concrete. So can we infer backwards, like from the application note, we can infer an acknowledgement of ambiguity? The difficulty I have standing here, Your Honor, is well aware of the government's view regarding the wholeness here of line of reasoning. The problem here, of course, is that the commission didn't anticipate any of this. The commission from day one has written their guideline manual to state clear statements and then explore it with commentary, and I don't think ever anticipated that courts would apply these rules of administrative law to say, you're doing two different things. This is one manual, and that's something that, obviously, the newly reconstituted Sentencing Commission is going to deal with. I expect we'll see action from them to make clear what I think was clear to the rest of us before. So it makes it hard for me to answer that question. I think what the commission meant to do here was to state a clear proposition as best it could and then give it meat by fleshing it out in the commentary, which is very necessary and very important. And the examples that it gives then are very sensible, which is that if you have collective damage to somebody, say in a fraud case, that's a common scheme. But if you have separate incidents that involve separate physical harm to someone, that that should not be grouped. And that's the case we're in here. Mr. Donoghue says that once you have inappropriately touched a toddler or done this vile act in front of a toddler, that when you then, on multiple other days, touch and abuse the toddler, that that's, he said, quote, very marginal harm. I could not disagree more. And it's just profoundly inconsistent. And I think with what the commentary says, I think it would be an appalling decision, actually, of a court to agree with that. So even based on the text itself, that there's a common scheme or plan, that really doesn't fit here, where you have somebody engaging in different types of abuse. Continuous course of conduct, sort of like common scheme or plan. It is, but again, you have different acts here. He's physically touching her in an appropriate way. He's doing things in front of her in an inappropriate way. Some of it he's videotaping. Some of it he's photographing. Well, but if he did all those things in a one-hour period of abuse, that would be one incident. Perhaps, but that's not the case that we're dealing with here. This is a very serious case involving numerous acts that take place over many days. So I think whether you look at the text alone or the commentary, as I advocate, I don't think it's a challenging question. What do we do with Mr. Dunn, who's right about Douglas and Bell? So, you know, to go back to that issue, what do we do with that? Well, so I think Douglas and Bell stand for the proposition that if the text of the guideline itself needs interpretation, that's the job of this court, and this court will apply plenary review. And so I'm not disputing. Is that what we said in Bell? That is what it basically says in Bell. Doesn't Bell say for application you apply plenary review even when you're applying a guideline? And to the extent it says that. Because there were no disputed facts in Bell, as I recall. Right. And to the extent it says that, as we say in our brief, that's inconsistent with Richards. So we don't need an en banc because we can just say that Richards controls because Bell's at variance with Richards? Right. And not only is it at variance with Richards, but more importantly, it's at variance with Buford, you know, which is a Supreme Court decision. Douglas was very clear about what it was doing, the en banc decision. That was about whether the airport worker had engaged in an abuse of trust. And the court explicitly said, we need to do more work regarding abuse of trust. We have not clearly explained, you know, what that means. That's a legal interpretation. And so I've agreed here that to the extent this court thinks that there needs to be an interpretation of this very clear guideline. Parent-like, you agree, parent-like is de novo. I do. They're asking us to adopt the Ninth Circuit's view that parent-like, that guideline requires parent-like control. You agree that that's de novo and you're saying that's wrong. Well, I'm saying it depends what parent-like means. I mean, parent-like, if you have authority over a child for an hour, you know, that is parent-like authority during that hour. If you're saying that the person has to have the capacity of something like a parent, then that's clearly wrong. And I don't think it's a difficult question. I think that the guideline itself, you know, with the word or makes it very clear that we're not dealing with parents. And certainly the commentary makes it explicit. You know, when it talks about a temporary relationship, a babysitter, which is exactly similar to what we have here. So, yes, plenary review for what the guideline means, but I don't think that takes very long here. And then clear error review as to the application, which is what Buford stands for. Could I ask you about County? Sure. That image, according to the record, was created by the mother of the child depicted in the image purportedly for the purposes of a medical matter. That was her intent when she took the picture. We have no evidence in terms of the child's setting, the pose. We have a general description of what the focus of the image was, what they were trying to take a picture of, which was the child's genitals because of a rash. What makes that illegal child pornography? So it is a lascivious image as distributed by the defendant. So you're asking us to focus on the state of mind of the defendant, what he did with the image? Yes, as well as the photograph itself. You could have a photograph that serves both purposes. And I think it's important to note here that the statute, the distribution statute, is written very carefully in a passive voice. It could have been written to say, you took an image with the intent to depict sexually explicit conduct. It doesn't say that. It says that the image, the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct. But our DOS factors say that we have to focus about the intended impact on the recipient. And the mother's intended impact on the recipient was check out this problem, not be aroused by this image. Well, the DOS, that's only one of the DOS factors, of course. And the DOS factors are not exclusive. What's important in this case is, Your Honor said we don't know about the setting, but we actually do have the picture. And we can see. We don't have it in the record. I'm not asking to see it. We don't have it in front of us. And I didn't see words describing it in any more detail than what I just shared with you. Sure. Well, the Court accurately describes it. It is a photograph of really the nude area of a child and the child's genitalia. That, under a couple of the DOS factors, is a lascivious image. And the Court can consider that. But if there's no dispute, it was not intended to be lascivious. The mother sent it for, as Judge Schwartz said, a medical purpose. And under our decision in Villard, how can you get around that? Well, in Villard, I believe the image was not available, if I recall correctly. And the Court had to look at what the facts were. The facts here, again, are of this very clear image. What I'm suggesting is that this is a photograph of... You could have a photograph taken of sexually explicit conduct that is taken for a medical purpose, where you want a doctor to look at something, even though what you're looking at, to anyone else, is sexually explicit conduct. That then doesn't exclude it from being child pornography when it's distributed for that purpose. So it's transformed. Well, it's not transformed. I think it serves two different purposes. And I think... But let's break this down. Because can we agree that when a parent takes a photograph like this one and sends it to a doctor for medical care, that that is not child pornography, full stop? What I would say instead is that the mother has not committed a federal crime. And the important thing to look at here, again, this is written in the passive voice. What's not in the passive voice, the verb, the crime, is distribution here. There's also various crimes of producing, shipping, mailing. Your Honors are familiar with the statute. And I think that's where... Well, the mother distributed it. She distributed it to the medical professionals. So to get back to Judge Schwartz's question, is it really all about the intent of the sender? You've got the same image sent by a parent for perfectly appropriate parental responsible reason. And then you've got the defendant sending it for a different reason. The only thing that has changed is what's in the mind of the sender. And that's right. And I think, you know, the Supreme Court has taught very recently many times that there needs to be criminal intent in order to have a criminal offense. There needs to be a criminal mens rea. And here the mens rea is obviously not just in the production of the image. We see that in the passive way that this statute's written. The mens rea has to apply to the act that the person takes and whether they have criminal intent at that point. Well, let's pretend like one of the cases that talk about this said, like, you can tell it's a dated case because it talks about the Sears catalog being sent. I remember the Sears catalog. And if we adopt your perspective, the mind of the sender, and he finds images in this catalog that arouse him and thinks will arouse like-minded persons, we have now made the catalog contraband. That can't be the test. No, and that's why there are multiple levels here. That's where the dos factors become important. You could have an image in the Sears catalog that for some reason arouses somebody and he shares it with somebody else who for some reason is aroused by it. But we're still going to apply the dos factors and say, no, maybe that's his thing, but this is not a lascivious image as defined by law. That's not the case here. This is, if produced for the purpose of child pornography, unquestionably, a lascivious image of a child's genitals. This one was not produced for that purpose. Correct. And so what I'm suggesting is that where we then look to the intent, when we're looking at one of these crimes, is in the criminal act. If the criminal act is producing, then yes, we would say that person has to have the intent at that point to produce an image that's child pornography. That's why this mother is not guilty of an offense. She produced the image, but that wasn't her goal. But if somebody takes an image that is lascivious under the law and distributes it, if that's the charge, which is what's the charge here, then that person is guilty of the offense. Tell us, then, how is this image? Forget the motivation of the sender-recipient, just the image itself. When we don't have evidence in front of us of the pose, the setting, we know it was at least partially unclothed. We know the targeted viewfinder for the photograph to be taken was the child's genitals. That's all we have. That is. It's a clear and explicit image of the child's genitals. We'll supply it to the court if the court wants to see it, but that is a classic. There's nothing else in that image. I accept your representation of what's depicted. I just want to know, was there anything else in the image? Like, you know, you saw there are things like, is the pose sexually coy in some way, or the image was taken in a place that sex would take place, you know, that sort of thing. Is there anything else that you could give us in words? I trust what's depicted, but that's what I'm having some challenge with, is how do I apply the DOS factors to this image other than this one fact in front of us, which is the exposed genitals of the child. Right, so the answer to that question is no. Nothing about the pose or the location. But again, this is a classic pornographic image to send somebody a picture only of, you know, a young child's new genitalia. And so nothing else was depicted. The head wasn't depicted, arms, hands, just that part. Correct. But DOS, the application of DOS in VR is very clear that you don't have to meet every factor. And interestingly, the defense has not argued in this case ever that this is not a lascivious image if it was produced for that purpose. So, you know, it has not followed the line of questioning that Your Honor is suggesting. They have only focused on the motive of the producer. And that, by the way, would get us into a lot of trouble because there are, unfortunately, probably hundreds of thousands of images out there on the Internet that we don't want to be out there. It has never been required that the government prove who took the picture, the intent of the photographer. That creates quite a significant burden that has never existed. And it leads me to my final point, if I could just take one more moment, which is this is on plain error review, and that's important also. If this is such a troubling question, and maybe our dialogue suggests that, there is no plain error here. There is no exactly applicable case. The error is not plain. And most importantly, the defendant has the burden to show a reasonable probability that this case would come out differently. There's no way. The sentence on this count was concurrent. The guidelines wouldn't change. The evidence regarding the minor, this minor number two, was in the record anyway. Minor number two was not only the subject of count eight, but also count nine, which was the possession count involving everything on his phone. The judge is certainly going to take into account minor number two, given the relationship to the defendant. The court can look at the victim's statement that was submitted by the mother. It's one of the rawest expressions of pain I have ever read in one of these cases. This didn't matter, is what it comes down to, that he had this extra conviction for count eight. And so that's an important reason as well, that there should be no reversal. What's your view on the discrepancy on count two? Same as Mr. Donohue's, that the oral record controls. Thank you, Mr. Donohue. Thank you very much. Rebuttal, Mr. Donohue. Judge Schwartz, collaborate on the Sears catalog analogy, and I'm going to propose one I think is even closer. The government's argument in this case, a defendant who found a picture of a child's genitalia in a textbook of pediatric medicine and sent that to another person would be guilty of distributing child pornography. I think that's plainly untenable. Well, doesn't it? Doesn't it depend on the intent? I mean, if one med student takes a snapshot of what you just described and sends it to another med student saying, you know, for medical conversation, that's not a crime, right? Correct. But if somebody takes a snapshot of that from the medical textbook and sends it with the intent and purpose of exploitation, then maybe it is a crime, right? No, because the statute defining child pornography at 18 U.S.C. 2256 says the image's production, let's start with production, must involve a child engaged in sexually explicit conduct. So we don't look at why someone was at a subsequent time looking at or distributing an image. We look at what the child was engaged in at the time it was created. And there's no dispute in this case that at the time of the production of this image, the child was not engaged in sexually explicit conduct. It has to, well, gosh. I take your point about what, you know, if we play out the hypotheticals, the government's position may be troublesome, but isn't it even more troublesome to think that people could be taking photographs or videos of private parts of children when the children are not engaged in any sexual activity, they're just nude, and that that could never become child pornography? Is that your argument? No, and I think actually there's a case to be made that this conduct could be prosecuted under Pennsylvania's child pornography law. I'd refer the government to the... Well, stick with federal law for now. Well, I think it's not a crime under the federal law. Not a crime under federal law. And the reason it might be under Pennsylvania... And why not? Because at the time the person took the video of the nude child, the child was not engaged in sexual activity? Correct, and sexual activity in this context includes the broad lascivious exhibition. And for that to be the case, the person has to be creating the image for the purpose of stimulating a sexual response of some kind. All right, well, but showing genitalia, isn't that lascivious by definition? No, we have the very... Under the statute, it's... No, I mean that's, and in fact, while the dust factors don't apply here, that's why they were originally enunciated, so that when you had images of child nudity, generally, be it of the whole body, even of an identifiable child, or a case like this, you look at a range of circumstances, there's no rule depictions of genitalia are necessarily lewd. And that rule wouldn't hold because of the examples such as this photo, or a photo in a textbook of medicine. By contrast, the definition of child pornography under Pennsylvania law might reach this. And I refer the court to the... All right, but under federal law, just so I understand your argument, you're saying it can't be transformed. If the person who produces the image produces it for a harmless or a licit purpose, that it can't later turn into child pornography because somebody else uses it for an illicit purpose. Under the federal statute, correct, Your Honor. Okay. If I could just ask just one question, do you agree that you did not argue the image was not lascivious? No, I don't agree with that. It's true, we focus... If I may link that question to a point Mr. Zausman made about the dangerousness of looking to motive. This question implicates that, because he's correct that if we didn't know the motive of the creator, we would have to say, is this lascivious by looking to the Dost factors. And there are many situations where we don't know the motive of a creator. Here, though, this is an unusual one in which the image was created for a known purpose. And of course, the image, it doesn't become child pornography, as Villard said, because it's placed in a forum where a pedophile might enjoy it. But just the fact that we're wrestling with it means that there's no plain error. It means there may be error, but it wasn't plain, right? I feel it is plain in light of the statutory language requiring that the production of the image involve the child being engaged in sexually explicit activity, which means we have to look to the time the image is taken. And it's undisputed in this case that the time it was taken, it was, as the government puts it, an innocent image. So I would submit it is plain in that respect. May I briefly address a point on the first issue? So I believe Mr. Zausman agreed to the extent that if the question is, does this provision require parent-like authority, that question is subject to de novo review. And as Your Honor pointed out, the Ninth Circuit has held that point. The reason this is not parent-like authority, in turn, is because there was not a situation, as my friend suggested, where the child was entrusted to my client's responsibility for an hour. First of all, I think an hour is an overestimate, but even if we take an hour, what this record shows is no more than that my client had access to the child for an hour. And that is different than a babysitter to whom a child is entrusted for an hour. So that is the key distinction, that access is not enough. Abusing a child temporarily unattended by a parent is not enough. Yeah, I mean, if she were alone and left the door open accidentally while she was showering, that's access. You know, a malefactor could get in the room. Right. Without permission. Right. That's not this case. He was there with permission for at least, you know, six days. Right. But we don't even have so much as she couldn't even testify. I told him to come get me if the baby woke up. There's nothing on that. There's nothing. There's no blank slate on that. Right. Okay. Thank you very much. Thank you. Thank you, Mr. Zosmer. This case and the previous one were both very well briefed and argued. The court appreciates your hard work. We'll take the matter under advisement.